UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL LEE AMBURN,

            Petitioner,

    v.

TRACY JOHNSON, Warden,

            Respondent.

Case No. 20-cv-09283-JST

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Daniel Lee Amburn, challenging the validity of his state court conviction. ECF No. 1. Respondent has filed an answer to the petition, ECF No. 13 ("Answer"), and Petitioner has filed a traverse, ECF No. 14. For the reasons set forth below, the petition is DENIED.

## I. PROCEDURAL HISTORY

In 2017, Petitioner pleaded guilty in Del Norte Superior Court to assault with a deadly weapon (Cal. Pen. Code § 245(a)(1)) and admitted two prior strike convictions pursuant to a negotiated plea agreement. Answer, Ex. 4 at 2. Petitioner was sentenced to 25 years to life in state prison. Answer, Ex. 4 at 2.

Petitioner appealed the conviction and judgment. Pursuant to *People v. Wende*, 25 Cal.3d 436 (1979), Petitioner's appointed appellate counsel, Martin Kassman, and the state appellate court reviewed the record to determine if there were any arguable issues on appeal. Answer, Exs. 3 and 4. Neither Mr. Kassman nor the appellate counsel found an arguable issue. Petitioner did not file a supplemental brief, did not request to have appellate counsel relieved, and did not obtain a certificate of probable cause. The state appellate court affirmed the conviction. *People v.*

1  *Amburn*, C No. A152186, 2018 WL 3434291 (Cal. Ct. App. Jul. 17, 2018).

2      On September 17, 2018, Petitioner filed a habeas petition in the California Court of

3  Appeal, which was denied on September 19, 2018 without prejudice to refiling in superior court.

4  Answer, Exs. 5, 6.

5      On April 2, 2019, Petitioner filed a habeas petition in the Del Norte Superior Court,

6  alleging that trial counsel was ineffective because she incorrectly informed him that he would

7  qualify under Proposition 57 for early release after serving two to three years of a 25-years-to-life

8  sentence and she advised him to plead guilty based on this incorrect understanding of Proposition

9  57. Answer, Ex. 7. The Del Norte Superior Court denied this claim in a reasoned decision on

10  May 31, 2019. Answer, Ex. 8. On July 5, 2019, Petitioner filed a motion for reconsideration,

11  which was denied on September 3, 2019. Answer, Ex. 9.

12      On October 22, 2019, Petitioner filed a habeas petition in the California Court of Appeal

13  challenging the denial of the motion for reconsideration. On October 25, 2019, the state appellate

14  court denied the petition for failure to include the challenged order denying the motion for

15  reconsideration. Answer, Exs. 10 and 11. On December 20, 2019, Petitioner again filed a habeas

16  petition in the California Court of Appeal, this time including the order denying the motion for

17  reconsideration. On February 19, 2020, the state appellate court denied the petition. Answer, Exs.

18  12, 13.

19      On March 19, 2020, Petitioner filed a habeas petition in the California Supreme Court,

20  alleging that trial counsel was ineffective when she incorrectly informed him that he would qualify

21  under Proposition 57 for early release after serving two to three years of a 25-to-life sentence, and

22  that his due process rights were violated by trial counsel's lack of knowledge regarding

23  Proposition 57 and by the District Attorney's "invalid/faulty" plea offer. Answer, Ex. 14. On

24  September 23, 2020, the California Supreme Court summarily denied this claim. Answer, Ex. 15.

25      On December 7, 2020, Petitioner filed the instant habeas petition in this Court. ECF No. 1.

26  On February 23, 2021, the Court found that the petition stated the following cognizable claims for

27  federal habeas relief: (1) trial counsel was ineffective when she incorrectly informed Petitioner

28  that, due to the applicability of Proposition 57, Petitioner would not serve more than two to two-

United States District Court
Northern District of California

1   and-a-half years in prison; (2) Petitioner's guilty plea was neither voluntary nor intelligent because

2   the advice he received from counsel was not within the range of competence demanded of

3   attorneys in criminal cases, thereby leaving him unaware of the direct consequences of his guilty

4   plea and without the information necessary to assess intelligently the advantages and

5   disadvantages of pleading guilty; and (3) the plea bargain was breached when the superior court

6   refused to apply Proposition 57 to reduce his sentence.  ECF Nos. 10, 16.  The Court ordered

7   Respondent to show cause why federal habeas relief should not be granted.  *Id.*

8                              **II.  FACTUAL BACKGROUND**

9          The following factual and procedural background is taken from the California Court of

10  Appeal's opinion:[1]

11         In December 2015, Amburn was paroled from state prison after serving a 19-year
       sentence for a second robbery conviction.  In May 2017, Amburn and Elizabeth
12     Jean Rinehart (collectively, defendants) had a physical altercation with a neighbor.
       The prosecution charged defendants with making criminal threats (Pen. Code,
13     § 422 subd. (a) (count 1)) [FN 1] and alleged defendants personally used a deadly
       weapon, a knife, during the offense (§ 12022, subd. (b)).  The prosecution also
14     charged defendants with assault with a deadly weapon (§ 245, subd. (a)(1) (count
       2)).  The complaint alleged Amburn had two prior robbery convictions, each of
15     which constituted a strike (§§ 667, subd. (b), 1170.12) and a serious felony (§ 667,
       subd. (a)).
16
           FN 1: Undesignated statutory references are to the Penal Code.
17
       In June 2017, Amburn pled guilty to count 2.  Amburn initialed and signed a felony
18     plea declaration form stating: "Plea to Count 2 as an OPEN plea.  Admit the 2 prior
       Robbery convictions.  Defense will file a '*Romero*'/1385 motion to strike the prior
19     strike conviction(s).  All charges against Co-defendant, Elizabeth Rinehart, will be
       dismissed . . . .  The DA's Office reserves the right to refile against Ms. Rinehart, if
20     this plea deal is not accepted by the Court or if defendant successfully withdraws
       his plea.  Max exposure is 25—Life."  At the plea hearing, Amburn entered an
21     *Arbuckle* waiver.  He pled guilty to count 2 and admitted two strike priors (§§ 667,
       subd. (b), 1170.12) and one prior serious felony (§ 667, subd. (a)).  The trial court
22     determined Amburn knowingly, intelligently, and voluntarily waived his
       constitutional rights and that there was a factual basis for the plea.
23
       Amburn filed numerous "letters in support of . . . sentencing" and a *Romero*
24     motion.  The prosecution opposed the motion.  At the August 2017 sentencing
       hearing, the court noted it had read and considered the probation department's
25     sentencing report, the letters supporting Amburn, and the *Romero* motion and

26
      _____
27  [1] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. Daniel*, 853
    F.3d 1049, 1052–54 (9th Cir. 2017).  Based on the Court's independent review, the Court finds
28  that it can reasonably conclude that the state court's summary of the prosecution case and the
    defense case is supported by the record, unless otherwise indicated in this order.

United States District Court
Northern District of California

opposition.  Amburn and the victim addressed the court, and the court heard argument from the parties on the *Romero* motion.  The court determined the negotiated plea was in the interest of justice.  It examined the sentencing factors (Cal. Rules of Court, rules 4.421, 4.423) and denied the *Romero* motion, concluding "this is clearly the kind of case that is in the spirit of the [ ] three strikes law."  The court sentenced Amburn to 25 years to life in state prison on count 2 and dismissed the other charges.  [FN 2]  The court imposed various fines and fees, awarded custody and conduct credits, and reserved jurisdiction regarding restitution.

> FN 2: Pursuant to the parties' stipulation, the court struck Amburn's plea to the prior serious felony (§ 667, subd. (a)) so that Amburn could be sentenced to 25 years to life, pursuant to the plea agreement.

*Amburn*, 2018 WL 3434291, at *1.

## III. DISCUSSION

### A.    Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "had substantial and injurious effect or influence in determining the jury's verdict."  *Penry v. Johnson*, 532 U.S. 782, 795 (2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at

4

405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

AEDPA requires a district court to presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  It is error for a federal court to review *de novo* a claim that was adjudicated on the merits in state court.  *See Price v. Vincent*, 538 U.S. 634, 638-43 (2003) (reversing judgment of 6th Circuit granting habeas relief on *de novo* review where claims did not meet standards for relief under § 2254(d)(1)).

The layers of deferential review mandated by AEDPA can be summarized as follows:  First, challenges to purely factual questions resolved by the state court are reviewed under Section 2254(d)(2); the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record.  Second, fact-based challenges founded on evidence raised for the first time in federal court are reviewed under Section 2254(e)(1); the question on review is whether the new evidence amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual findings.  Third, challenges to purely legal questions resolved by the state court are reviewed under Section 2254(d)(1); the question on review is (a) whether the state

court's decision contradicts a holding of the Supreme Court or reaches a different result on a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court; or (b) whether the state court, after identifying the correct governing Supreme Court holding, then unreasonably applied that principle to the facts of the prisoner's case.  And, fourth, challenges to mixed questions of law and fact receive similar mixed review; the state court's ultimate conclusion is reviewed under Section 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with the deferential protection ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1).  *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991);[2] *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  The state superior court denied Claim No. 1 in a reasoned decision on May 13, 2019, and the remaining claims were later summarily denied by the California Supreme Court on September 23, 2020.  When a federal claim has been presented to a state court and the state court has summarily denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.  *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (one-sentence order denying habeas petition analyzed under Section 2254(d)).  Accordingly, in reviewing the habeas claims not addressed by the state superior court, this Court follows the Supreme Court's direction and "determine[s] what arguments or theories . . . could have supported" the California Supreme Court's rejection of the federal claim, and then gives deference to those arguments or theories under AEDPA.  *Id.* at 102.

/ / /

/ / /

---

[2] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default.  *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005).  The look through rule continues as the Ninth Circuit held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear."  *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

United States District Court
Northern District of California

**B.      Request for Evidentiary Hearing**

In his traverse, Petitioner requests that the Court hold an evidentiary hearing if the Court finds that the facts and evidence in his traverse are insufficient.  ECF No. 18 at 23.  Petitioner argues that the state court fact finding process is not entitled to deference because (1) the state court failed to conduct an evidentiary hearing in violation of his "right to a fair process for developing the record supporting his claim in violation of *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004), *Hurles v. Ryan*, 706 F.3d 1021 (9th Cir. 2013), *Williams v. Woodford*, 859 F.Supp.2d 1154, 11159 (E.D. Cal. 2012);" (2) there is no evidence in the record supporting the state court's conclusion that he would have accepted the plea bargain if he had been correctly advised as to the nature of his plea, and the evidence in the record, in fact, suggests that he was incorrectly advised; and (3) that the state court acted unreasonably in not engaging in further fact-finding when the record "was clearly consistent with his allegations."  ECF No. 18 at 23-24.

The Court DENIES Petitioner's request for an evidentiary hearing.  Petitioner had a full and fair opportunity in state court to develop his claim that trial counsel failed to accurately advise him as to terms of his plea bargain.  Moreover, as discussed below, the evidence in the record was consistent with the state court's denial.  The state court is not required to *sua sponte* hold an evidentiary hearing on this claim where the evidence in the record is consistent with the state court's denial.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if record refutes petitioner's factual allegations or otherwise precludes relief, an evidentiary hearing is not required); *Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012) (state court does not have to conduct evidentiary hearing to resolve every disputed factual question; "state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question.").  The requested evidentiary hearing is DENIED because it would not develop any material facts which Petitioner did not have a full and fair opportunity to develop in state court.  28 U.S.C. § 2254(e)(2); *see also Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (evidentiary hearing properly denied where petitioner "failed to show what more an evidentiary hearing might reveal of material import").  In addition, any evidence presented in a

federal evidentiary hearing could not be considered by this Court because, as explained below, the state court's denial of Petitioner's claims was neither contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. *Shoop v. Twyford*, 142 S. Ct. 2037, 2043-44 (2022) (review of factual determinations under Section 2254(d)(2) is expressly limited to evidence presented in State court proceeding, and review of legal claims under Section 2254(d)(1) is also limited to record that was before state court; not allowing writ to obtain new medical evidence to support claims that state court had adjudicated on merits because federal court's review limited to record before state court); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (new evidence presented at evidentiary hearing cannot be considered in assessing whether state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" under Section 2254(d)(1)).

## C.     Petitioner's Claims

Petitioner alleges that he is entitled to federal habeas relief because (1) trial counsel was ineffective when she incorrectly informed Petitioner that, due to the applicability of Proposition 57, Petitioner would not serve more than two to two-and-a-half years in prison; (2) Petitioner's guilty plea was neither voluntary nor intelligent because the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases, thereby leaving him unaware of the direct consequences of his guilty plea and without the information necessary to assess intelligently the advantages and disadvantages of pleading guilty; and (3) the plea bargain was breached when the superior court refused to apply Proposition 57 to reduce his sentence.

### 1.     Ineffective Assistance of Counsel

#### a.     Legal Standard

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)

1   ("negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth

2   Amendment right to effective assistance of counsel."); *Turner v. Calderon*, 281 F.3d 851, 879 (9th

3   Cir. 2002). Therefore, the two-part test of *Strickland* applies to counsel's assistance in advising a

4   defendant to accept or reject a plea offer. *See Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

5       In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must

6   establish two things. First, the defendant must establish "that counsel's representation fell below

7   an objective standard of reasonableness." *Id*. at 687–88. Second, the defendant must establish

8   that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

9   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

10  been different." *Id*. at 694. On habeas review, it is not enough for a federal court to have found

11  counsel ineffective. The federal court must also find that the state court's resolution of the issue

12  was unreasonable, a higher standard. *Harrington*, 562 U.S. at 101.

13      Regarding plea bargains specifically, the first *Strickland* prong requires the petitioner to

14  establish that counsel's advice regarding the plea bargain was deficient, meaning it was not

15  "'within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56

16  (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In advising a defendant, "[c]ounsel

17  cannot be required to accurately predict what the jury or court might find, but he can be required

18  to give the defendant the tools he needs to make an intelligent decision." *Turner*, 281 F.3d at 881

19  (counsel who advised defendant to reject offer of 15-years-to-life was not deficient where

20  evidence showed that petitioner informed of potential death penalty at trial, and counsel had

21  allowed petitioner to think about offer overnight). The absence of evidence that counsel gave

22  constitutionally inadequate advice cannot overcome the presumption that counsel's conduct was

23  within the range of reasonable professional advice. *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013)

24  (absence of evidence of adequate evidence cannot overcome strong presumption that counsel's

25  performance was not deficient). Erroneous advice regarding the consequences of a guilty plea is

26  insufficient to establish ineffective assistance; petitioner must establish a "'gross

27  mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice

28  on the probable effects of going to trial.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th

United States District Court
Northern District of California

9

1   Cir. 2004) (citing *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990).  The Supreme

2   Court has declined to determine whether erroneous advice as to parole eligibility can constitute

3   ineffective assistance.  *Hill*, 474 U.S. at 60.

**b.      State Court Denial of Ineffective Assistance of Counsel Claim**

5   Petitioner raised this ineffective assistance of counsel claim for the first time in his habeas

6   petition filed with the state superior court and the state superior court denied this claim in a

7   reasoned order as follows:

> A petition for habeas corpus will be dismissed if it alleges an issue that could have
> been, but was not, raised on direct appeal. (*In re Dixon* (1953) 41 Cal.2d 756, 759.)
> If a petitioner failed to raise his claim on direct appeal, he is procedurally barred
> from raising it on habeas review.  (*Dixon*, 41 Cal. 2d at P. 759.)  Further, it is clear
> by the record, as noted by the signed Tahl waiver form, that the Petitioner was
> absolutely cognizant of the following: "This is a 3 strikes case where the maximum
> penalty is ***25 years to life.  Not eligible for probation*** and not eligible for
> sentencing under PC 1170(h).  ***May*** be eligible for Prop 57 relief through the
> CDC."  (*Emphasis added.*)  At time of entry of plea, the Petitioner stated he read
> and signed said document.  Petitioner now claims he truly thought he would get
> probation, never was aware of the 25 years to life sentence possibility, and would
> only do 2 to 2.5 years in prison.  Such belief is not credible.  His beliefs and
> statements are contradicted by the record.  He read and signed a Tahl waiver form
> clearly stating otherwise than his now pitched belief.  All of this was on the record
> for appeal.  As such, the issue could be procedurally barred from being raised as it
> was clear by the record.
>
> Nevertheless, it is clear Petitioner received the benefit of the bargain where the co-
> defendant's case was dismissed and Petitioner ***may*** be considered for early parole
> review by prison officials per Proposition 57.  Petitioner claims no one explained
> how Proposition 57 applied.  However, he provides damning documentation to the
> contrary whereby he claims he "wasn't paying much attention . . ." for he was
> thinking about other aspects of the potential sentence.  He additionally claims that
> there was never a bail hearing.  Such is contradicted by the minutes in the
> underlying case.  He claims he was sentenced to 30 years to life.  Such is also
> contradicted by the minutes in the underlying case which reflect 25 years to life.
> Petitioner was aware of the *Romero* motion and its discussion of facing 25 years to
> life prior to sentencing.  He also admitted in the damning documentation provided
> that he saw the 25 years to life sentence exposure on the plea form and in the
> sentencing reports and was aware that a 3rd Strike carries 25 years to life.
> However, he further stated that "We hear and see what we want to hear and see."  It
> appears that this matter involves an issue of buyer's remorse, especially since
> Petitioner now believes prison officials will deny parole under Proposition 57 when
> "the board (parole) will look at the transcripts and police reports and deem me a
> threat to society . . ."
>
> Just as predicted by his trial counsel, Petitioner still ***may*** be eligible for Proposition
> 57 relief as noted that the Prison authorities slated said review for 2021.
> Regardless, Petitioner has not made a prima facie case for ineffective assistance of
> counsel due to the Petitioner's noted lack of credibility on the face of the provided
> records.  It is abundantly clear he was told of the potential consequences which are

10

supported by the record.  Whether the Petitioner chose to heed those words is a different story.  Also, the Court will not consider the unsigned and unverified declarations provided by Petitioner.

ECF No. 13-4 at 139 (emphasis in original).

### c.   Analysis

Petitioner argues that his trial counsel, Ms. Olson, provided ineffective assistance of counsel when she incorrectly informed him that he would be receiving a 4-year sentence with a 25-to-life enhancement and that Proposition 57 would result in the "un-enforcement" of the enhancement and that he would be released within two to two-and-a-half years because he received a sentence of 25-years-to-life; the Three Strikes Law is not an enhancement; and Proposition 57 was not applicable to third-strikers at the time of his plea bargain.  He argues that Ms. Olson did not understand Proposition 57, did not explain Proposition 57 to him, and never told him that he would be receiving a sentence of 25-years-to-life.  *See* ECF No. 1 at 7-12; ECF No. 18 at 9.

The Court has reviewed the record and finds that the state court's denial of this claim was an reasonable determination of the facts in light of the evidence presented in the state court proceeding.  The state court's denial of this claim rests upon its factual determination that trial counsel accurately informed Petitioner of the potential consequences of his plea bargain.  AEDPA requires the Court to presume correct the state court's determination of this factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).[3]  Petitioner's allegations do not rebut the presumption of correctness required by AEDPA because, as the state court found, Petitioner's beliefs and

---

[3] Petitioner argues that he was only required to prove a prima facie case of ineffective assistance of counsel in state court, citing to *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003).  In *Nunes*, the Ninth Circuit held that a petitioner need only demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with "reasonable probability" that he would have accepted the plea offer, a probability "sufficient to undermine the result," and that there was "ample evidence in the record before the state court to support" his assertion that his attorney gave him the wrong information and advice about the state's plea offer and that if he had instead been informed accurately, he would have taken the bargain.  *Nunes*, 350 F.3d at 1054.  Here, however, Petitioner has not made a *prima facie* case of ineffective assistance of counsel.  Petitioner's claims of ineffective assistance of counsel are contradicted by the record.

United States District Court
Northern District of California

1    statements are contradicted by the record.  The record shows that Petitioner that Petitioner was
2    informed, and aware, that he faced a 25-years-to life sentence.
3           Petitioner himself referenced a 30-year-to-life term when asking for leniency at the
4    sentencing hearing: "I would ask this court if they consider --- to consider a suspended sentence of
5    30 to life, probation for whatever term you describe.  And as probation and the D.A. said I am a
6    career criminal then I'll reoffend and I'll have a 30 to life sentence."  ECF No. 13-3 at 660.
7           At the June 13, 2017 plea colloquy, Ms. Olson stated that the case was a three-strikes case,
8    and the trial court judge emphasized this point to Petitioner.

| | |
|---|---|
| Ms. Olson: | My client will enter a plea to Count 2, which is assault with a deadly weapon, a knife.  It's an open plea.  This is a three-strikes case.  He has two prior strikes he'll be admitting.  At the time of sentencing I'll be filing a *Romero* motion to strike either one or both of the strikes.  He's not eligible for probation.  He's not eligible for certain under P.C. 1170(h).  But he is eligible for Prop 57.  And he would have to apply for that through the prison. |
| The Court: | Did you hear that, Mr. Amburn? |
| Petitioner: | I'm sorry? |
| The Court: | Did you hear what your lawyer said? |
| Petitioner: | Yeah. |
| The Court: | Okay.  And you have been through this before.  So you have a couple of strikes.  This is going to be a third strike.   Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | There is a strict limit on what the court, whoever the court is, whoever sentences you can do.  Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | And I take it you had an opportunity to discuss this case with your lawyer -- |
| Petitioner: | Yes. |
| The Court: | -- in some detail?  Have you taken any medications or anything that would affect your ability to think clearly and logically? |
| Petitioner: | No. |
| The Court: | Okay.  So now I'll ask you, did you initial this document? |

| | | |
|---|---|---|
| Petitioner: | Yes, sir. | |
| The Court: | Did you have a chance to talk to your lawyer about it? | |
| Petitioner: | Yes, sir. | |
| The Court: | And you initialed the various boxes on the left?  The initials, D.A., are yours? | |
| Petitioner: | Yes, sir. | |
| The Court: | All right.  And you're aware this is a third strike?  And the subject offense is a strike offense? | |
| Petitioner: | Yes, sir. | |

ECF No. 13-3 at 144-45.  In declining to assess attorney fees on Ms. Rhinehart, the Court again emphasized that Petitioner was facing a long sentence.

| | |
|---|---|
| The Clerk: | And attorney fees for [Ms. Rhinehart]? |
| The Court: | I'm not going to impose any in view of the fact that she's getting a dismissal and he's going to prison for a very long time and he entered an early plea. . . . So he's taking responsibility for what he did.  So he's going to pay a large price.  So I don't need to tack on attorney fees. |

ECF No. 13-3 at 152.

At the July 13, 2017 hearing on Petitioner's request for a continuance, the prosecutor described the plea agreement as stipulating to Petitioner receiving a sentence of 25 years to life in return for the charges against Ms. Rhinehart being dropped.

| | |
|---|---|
| The Court: | Is there any objection to the request for a continuance in order for Ms. Olson to file a Romero motion on behalf of Mr. Amburn? |
| Prosecutor: | I don't object to a continuance . . . And I know that we dismissed a very serious case against Mr. Amburn's significant other based on the understanding that he would be receiving 25 years to life in prison.  And if the defendant is going to now try on striking one of the strikes I see that as a potential violation of our negotiations. It that be the case then we may be in position we would continue with the case against Ms. Rhinehart. . . . I want to put everyone on notice it was not discussed there was a Romero motion filed.  I would see this as a violation of our plea negotiations. |

ECF No. 13-3 at 155-56.

At the August 10, 2017 sentencing hearing, in arguing Petitioner's *Romero* motion, both the prosecution and defense counsel stated that Petitioner faced a sentence of 25 years to life if the

13

two prior strikes were not struck.  Ms. Olson argued as follows: "The length of the sentence, 25 to life, that's a considerable amount of time given my client acknowledges he's 63 years old.  If the court strikes one of the strikes that would still leave a very lengthy sentence for my client to serve . . . it could lead to a nine or thirteen-year sentence regardless."  ECF No. 13-3 at 169.  The prosecution also referred to a 25 year to life sentence as the expected sentence and argued that there was no need to strike any of Petitioner's priors because Proposition 57 offered a "safeguard" against unjust sentences in that Petitioner could earn an earlier release under Proposition 57 and "theoretically be out in a couple of years."  ECF No. 13-3 at 171; *see also id*. at 171 ("But looking at whether or not he deserved a 25 to life sentence, People believes that he does."), at 173 ("Prison for life is where he belongs.  That's the spirit of the three strikes law . . . So prison for life is where defendant should go and that's what the People ask.").  The court denied the *Romero* motion and sentenced Petitioner "to state prison for the aggravated sentence pursuant to the three-strikes law of 25 to life."  ECF No. 13-3 at 182.

In addition to the statements made at the hearings, the plea declaration also specifies that Petitioner was facing a sentence of 25 years to life.  While the plea declaration specified that the maximum sentence for Count 2, Assault with a Deadly Weapon, Cal. Penal Code § 245(a)(1), was four years, the plea declaration elaborated that "[Count 2] is a serious felony offense and also a strike.  This is a 3 strikes case where the maximum penalty is 25 years to life. . . . Maybe eligible for Prop 57 relief through the CDC."  Petitioner initialed the statement that he understood that he could receive a maximum sentence of 25 years to life.   In describing the bargain, the plea declaration again stated that maximum sentence was 25 years to life:

> Plea to Count 2 as an OPEN plea.  Admit the prior Robbery convictions. Defense will file a "Romero" / 1385 motion to strike the prior strike convictions).  All charges against co-defendant, Elizabeth Rinehart, will be dismissed.  She will be released from custody at the time this plea is entered on the record.  The DA's Office reserves the right to refile against Ms. Rinehart, if this plea deal is not accepted by the Court or if defendant successfully withdraws his plea.  Max exposure is 25 – Life.

ECF No. 13-3 at 21-23.

Based on Petitioner's own admission at the sentencing hearing; the statements made by judge, Ms. Olson and the prosecutor at the June 13, 2017 plea colloquy, the July 13, 2007 hearing

on Petitioner's request for a continuance, and the August 10, 2017 sentencing; and the plea declaration, the state court could reasonably conclude that Ms. Olson accurately informed Petitioner that he would be serving a three-strikes sentence of 25-years-to-life with a four-year base term and that, with the application of Proposition 57, there was the possibility of Petitioner being released on parole early, depending on how the CDCR applied the time-credits portion of Proposition 57.

Moreover, to the extent that Petitioner argues that Ms. Olson informed him that he was eligible for Proposition 57 relief and that Proposition 57 could allow him to be released early, Ms. Olson accurately described Proposition 57. Proposition 57 was approved by California voters in the November 2016 general election. Proposition 57 added Section 32 of Article I to the California Constitution which (1) established a process for parole consideration for eligible persons convicted of nonviolent crimes, and (2) increased incarcerated persons' ability to earn credits to reduce their sentence. Cal. Const., Art. I, § 32(a). With respect to early parole consideration, Cal. Const., Art. I, § 32(a)(1) provides that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense," and that the "full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." Cal. Const., Art. I, § 32(a)(1). Ms. Olson correctly represented that, according to the language of Proposition 57 as codified in Section 32(a)(1), Petitioner was eligible for Proposition 57 relief. At the time of Petitioner's plea bargain, courts had held that a conviction for assault with a deadly weapon, Cal. Penal Code § 245, was a nonviolent felony offense within the meaning of Section 32(a)(1), *see People v. Harris*, C No. B281043, 2017 WL 4230834, at *2 (Cal. Ct. App. Sept. 25, 2017) (for Proposition 57 purposes, violent felonies are defined in Cal. Penal Code § 667.5(c); assault with a deadly weapon (Cal. Penal Code § 245) not listed in is Section 667.5(c)), and had held that the three-strikes sentence is an alternative sentence, *People v. Turner*, 134 Cal. App. 4th 1591, 1597 (Cal. Ct. App. 2005) ("The punishment of an indeterminate life term under the Three Strikes Law, by contrast, is not a punishment specified by statute for an "offense," i.e., the current act for which

15

the defendant is to be prosecuted. It is an alternative sentence imposed upon those who commit a current felony offense, and who are recidivist offenders.").  Although Ms. Olson incorrectly described the Three Strikes Law as a sentence enhancement, she was correct that Petitioner was eligible for Proposition 57 despite serving a three strikes sentence.  Proposition 57 provided that Petitioner would be eligible for parole after serving the four-year base term for his commitment offense of assault with a deadly weapon and provided the possibility of Petitioner earning credits to reduce his sentence.

While Petitioner is correct that, at the time of his plea bargain, he was not eligible for Proposition 57 relief, this does not render Ms. Olson's assistance ineffective within the meaning of the Sixth Amendment.  Petitioner's ineligibility for Proposition 57 relief at the time of his plea bargain was due to a temporary regulation promulgated by the California Department of Corrections and Rehabilitation ("CDCR").  In April 2017, the California's Office of Administrative Law ("OAL") approved the CDCR's "emergency rulemaking action" that defined "nonviolent offender" as *inter alia* inmates who were "incarcerated for a term of life with the possibility of parole," which would include inmates, such as Petitioner, who were not incarcerated for a triggering violent felony specified in Cal. Penal Code § 667.53 but had been sentenced to life with the possibility of parole pursuant to the Three Strikes Law.  *In re Edwards*, 26 Cal. App. 5th 1181, 1187–88 (Cal. Ct. App. 2018).  However, a regulation that is adopted pursuant to emergency rulemaking is not a permanent regulation.  The emergency regulation has an initial effective period of 160 days.  The emergency regulation can be extended under certain circumstances if approved by the OAL, but not beyond an additional 180 days.  Cal. Penal Code § 5058.3(a); Cal. Gov't Code § 11346.1(e).  While these emergency regulations became final in May 2018, shortly thereafter on September 7, 2018, the California appellate court voided the emergency regulations as inconsistent with the voters' intentions and the "plain language" of the Section 32(a)(1). *Edwards*, 26 Cal. 5th at 1191-91.  In response to *Edwards*, the CDCR adopted emergency regulations, effective January 1, 2019, that complied with *Edwards*.  *In re Arroyo*, 37 Cal.App.5th 727, 730 (Cal. Ct. App. 2019); 15 Cal. Code Regs. § 3496(a).  Because of the temporary nature of the CDCR regulations and their inconsistency with the plain language of Section 32(a), Ms.

Olson's representation that Petitioner would be eligible for Proposition 57 relief did not constitute ineffective assistance within the meaning of the Sixth Amendment.  Her assessment of the emergency regulations was shared by the prosecution as evidenced by his arguments in opposing the *Romero* motion:

> The law got changed to where a 25 to life sentence could be imposed to someone who is convicted of a serious or violent felony.  Most recently with the adoption of Proposition 57 even though somebody who was convicted of a serious felony could get sentenced to 25 to life, the defendant as he sits here today convicted of only a serious felony would not be precluded from Prop 57 relief even if the court was to sentence him to 25 to life. . . . [he] could theoretically be out in a couple of years if he actually earns that release while in prison.

*See* ECF No.13-3 at 171.  The plea declaration also specified that Petitioner was eligible for Proposition 57 relief.  *See* ECF No. 1 at 15.

Petitioner misunderstands Proposition 57.  Presumably Petitioner is arguing that Ms. Olson represented to him that Proposition 57 guaranteed an earlier parole date, so long as he was eligible for Proposition 57.  But, neither eligibility for Proposition 57 relief nor the application of Proposition 57 entitles an inmate to an earlier release date.  Proposition 57 provides inmates with the possibility of reducing their sentence through earning time credits and allows inmates to have a parole hearing earlier than was previously available.   The availability of time credits under Proposition 57 is determined by the CDCR.  Whether Petitioner is released on parole is determined by the Board of Parole Hearings ("BPH").  In other words, eligibility for Proposition 57 did not ensure that Petitioner would be released after serving two to two-and-a-half years. However, Proposition 57 made it possible for Petitioner to be eligible for a parole hearing after serving two to two-and-a-half years (instead of four years) if he earned sufficient time credits through the CDCR and if, at the earlier parole hearing granted due to Proposition 57, the BPH granted him parole.  But, as stated in the plea declaration and in the plea colloquy, the final determination of whether to grant Proposition 57 relief rests with the CDCR.  *See* ECF No. 1 at 15 (plea declaration stated that Petitioner was "eligible for Prop 57 relief *through the CDC*") (emphasis added); ECF No. 13-3 at 144 (at plea colloquy, Ms. Olson stated, "But he is eligible for Prop 57.  And he would have to apply for that *through the prison*") (emphasis added).

United States District Court
Northern District of California

Petitioner argues the following statements made by Ms. Olson in her letters are clear and convincing evidence that she did not understand the relevant law and that she misrepresented the plea bargain: Ms. Olson described the Three Strikes sentence as an "enhancement;" Ms. Olson stated that without a base term of four years specified, Petitioner would not have the opportunity to have his enhancement "unenforced by the Prison Board"; and Ms. Olson agreed that the legal status summary incorrectly failed to include the base term of four years. *See* ECF No. 1 at 41; ECF No. 18 at 9-10. These statements are not evidence that Ms. Olson misunderstood the Three Strikes Law, Proposition 57, or the plea bargain. As discussed *supra*, Ms. Olson was correct that Petitioner was eligible for Proposition 57 despite being sentenced pursuant to the Three Strikes Law, regardless of whether she correctly identified the Three Strikes Law as an enhancement or alternative sentence. And Ms. Olson was also correct that the legal status summary should correctly identify Petitioner's base term as four years. The base term determined the date of the initial parole eligibility hearing available pursuant to Proposition 57. Without a base term of four years specified, the Prison Board would not be able to allow him a parole eligibility hearing until he had served 25 years. Although Ms. Olson misspoke in using the terms "enhancement" and "unenforced," she correctly identified Petitioner as eligible for Proposition 57 pursuant to its plain language despite Petitioner being sentenced pursuant to Three Strikes Law and the existence of temporary emergency regulations that were being challenged in the state courts, and she correctly identified that if the legal status summary specified that Petitioner had a base term of four years, Petitioner's 25-years-to-life Three Strikes sentence would not "be enforced," in that 25-year minimum would not determine the timing of Petitioner's initial parole eligibility hearing.

The state court's denial of this claim also was not contrary to, nor an unreasonable application of, clearly established federal law. Petitioner's eligibility for Proposition 57 relief is a collateral consequence of his plea, not a direct consequence, because Proposition 57 relief depends on the CDCR and the BPH. The Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary. . . ," *Hill v. Lockhart*, 474 U.S. 52, 56 (1985), and has reserved the question of whether an attorney's failure to advise a defendant

regarding "collateral" consequences can serve as the basis for an ineffective assistance of counsel claim, *see Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally "reasonable professional assistance" required under *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Hill*, 474 U.S. at 60 ("We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of prejudice.'"). "[A] constitutional principle is not clearly established for purposes of § 2254 where the Supreme Court has expressly concluded that an issue is an open question." *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (internal quotation marks and citation omitted).  The Ninth Circuit explained the distinction between a direct and collateral consequence of a plea as follows:

> The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment. . . .  In many cases, the determination that a particular consequence is "collateral" has rested on the fact that it was in the hands of another government agency or in the hands of the defendant himself . . . the time of potential parole eligibility is not certain result of a guilty plea, but depends upon the defendant's conduct and is purely discretionary.

*Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988).  Here, the availability of Proposition 57 depends on another agency and Plaintiff's conduct.  The CDCR determines whether to award time credits by reviewing Plaintiff's conduct.  And while the grant of a parole hearing is automatic upon serving the minimum term, parole suitability is ultimately determined by the Board of Parole Hearings.  To the extent that Petitioner is arguing that that Proposition 57 was a "direct" consequence of his plea because Ms. Olson incorrectly informed him that Proposition 57 ensured that he would be released after he had served two to two a half years, the state court has already denied the factual claim underlying this claim – that Ms. Olson failed to tell Petitioner that he would be serving a 25-years-to-life sentence.

  The Court has carefully reviewed the record and governing law and finds that the state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law; and was not based on an unreasonable determination of the

United States District Court
Northern District of California

facts in light of the evidence presented in the State court proceeding.  Federal habeas relief is denied on Petitioner's ineffective assistance of counsel claim.

### 2.    Voluntary and Knowing Nature of Guilty Plea

Petitioner argues that his guilty plea was neither voluntary nor intelligent because he was incorrectly informed that Proposition 57 applied to him, and because if he had realized that he was receiving a 25-years-to-life sentence, he would not have agreed to the plea bargain.  ECF No. 1 at 11; ECF No. 18.  Respondent argues that the state court's rejection of his claim was reasonable because the state court reasonably determined that the record refuted Petitioner's claim that he was not advised of the direct consequences of his plea; neither counsel nor the court guaranteed Petitioner's eligibility under Proposition 57; and his plea was not premised on release from prison in two and one-half years, but on the charges against Ms. Rinehart being dismissed.  ECF No. 17-1 at 17-19.

### a.    Legal Standard

The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  *Id.*

### b.    Analysis

Petitioner raised this claim for the first time in the habeas petition filed in the state supreme court, and the state supreme court summarily denied this claim.  Answer, Exs. 14, 15.  When a federal claim has been presented to a state court and the state court has summarily denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.  *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (one-sentence order denying habeas petition analyzed under § 2254(d)).  Accordingly, in reviewing the habeas claims not addressed by the state superior court, this Court follows the Supreme Court's direction and "determine[s] what arguments or theories . . . could have

United States District Court
Northern District of California

supported" the California Supreme Court's rejection of the federal claim, and then gives deference to those arguments or theories under AEDPA. *Id.* at 102.

This claim relies on Petitioner's factual claims that Ms. Olson did not inform Petitioner that he would receive a 25-years-to-life sentence and that she misrepresented either his eligibility for Proposition 57 or the impact of Proposition 57 on his sentence. As discussed in detail above, AEDPA requires that this Court presumes correct the state court's determination that Petitioner's claims are not credible and Petitioner has not rebutted this presumption of correctness. With respect to this claim, the California Supreme Court's denial is supported by (1) the state superior court's factual determination that Petitioner was informed by Ms. Olson, his plea declaration, and the judge that he would be serving a 25-years-to-life sentence pursuant to the Three Strikes Law; and (2) the finding that Petitioner received the benefit of his plea bargain. Petitioner received the benefit of the plea bargain in that the charges against Ms. Rinehart were dropped; Petitioner received a base term of four years for Count 2; and Petitioner can receive, and has received, the benefits of Proposition 57, namely a parole hearing on July 9, 2021, after he had served his base term of four years. Without the plea bargain, Petitioner faced the possibility of Ms. Rinehart serving prison time; and being sentenced to 25-years-to-life pursuant to the Three Strikes Law if found guilty of Counts 1 and 2 and of having prior strikes; and having his initial parole eligibility hearing after serving seven years, because the base term of Counts 1 and 2 totaled seven years. Petitioner argues that he and Ms. Rinehart would not have been convicted of the charges or would have been convicted on lesser charges because the incident was, at most, a "sloppy fist fight" and because Ms. Rinehart had "done nothing wrong except chase after Petitioner trying to get him to stop." ECF No. 18 at 12, 17. However, the record indicates otherwise. The victim stated that he was cut eight times with a razor knife and that Ms. Rhinehart had a purple razor knife in her hand. Both the prosecutor and the victim describe Petitioner preventing the victim from retreating into his trailer; that the attack only ended after two people took Petitioner down; and that even when the police arrived, Petitioner still had the razor knife in his hand and was trying to go after the victim. The police report also provides a similar account of the attack. ECF No. 13-3 at 32-35, 652, 654-55. At sentencing, the trial court judge described the crime as approaching attempted

murder and expressed concern about the charges against Ms. Rinehart being dropped despite the

severity of her actions:

> It appears to the court in this situation that very being charged with attempted murder in a case where he got into a knife fight with him being the only one with a knife and slashed the victim across his throat as shown by in the video.  That but for defendant's luck he still had had a slash across this throat but didn't cut him wide open.

> He's lucky.  He could have been killed.  What the court finds disturbing is that he attempted to kill or slash someone, a complete stranger, solely after being called a name he did not like.  And threatened to kill said individual as well, apparently while on parole during this time the assault occurred . . . The crime did involve threat of great bodily harm.  The act disclosed a high degree of viciousness and callousness.  In America we're allowed to express ourselves, freedom of speech, whether you disagree with it or not.  It doesn't allow us to take a box knife and try to slash someone's throat or lock them out of their house . . . [Petitioner] did induce others to participate in a crime.  He drags his new wife with him who apparently took a box knife and tried to stab the victim in the belly and for no reason.  The district attorney dismissed the case.  And the court could do nothing about that.  But that was the recommendation by the People.  . . .  This particular case I have a situation where apparently defendant attempted to maim or even kill the victim in this matter all over a white rage of being called a name he did not like which most children would find offense but not want to kill someone or stab them.

ECF No. 13-3 at 662-63.  Having carefully considered the evidence presented in the state court

proceeding, the Court finds that the state court's summary denial of this claim was not an

unreasonable determination of the facts.

Nor was the state court's summary denial of this claim contrary to, or an unreasonable

application of federal law.  The Court must presume correct that state court's finding that the

advice that Petitioner received from Ms. Olsen was within the range of competence demanded of

attorneys in criminal cases.  Accordingly, Petitioner has no basis upon which to attack the

voluntary and intelligent nature of his plea.  *Hill*, 474 U.S. at 56-57.  Federal habeas relief is

denied on this claim.

### 3.    Breach of Plea Agreement

The petition brings the following breach of plea agreement claim:

> Petitioner was convicted on the basis of a guilty plea that was obtained by Petitioner's attorney and the state without Petitioner's knowledge and appreciation that the offered Plea Agreement (Proposition 57) did not exist at the time.  This violated Petitioner's right to due process of law as guaranteed by the 5th Amendment of the United States.  *See Tower v. Phillips*, 979 F.2d 815 (11th Cir. 1992). . . . Had Pet[itioner] been made aware by any of the parties involved (Pet.

Atty., D.A., presiding Judge, that Prop 57 would not benefit Pet. as advertised, Pet. would have pulled his plea and proceeded to trial.

ECF No. 1 at 12. Petitioner cites to *United States v. De La Fuente*, 8 F.3d 1333 (9th Cir. 1993) for the proposition that "in construing [a] plea agreement, the Court must determine what the defendant reasonably understood to be the terms of the agreement when he [pled] guilty." ECF No. 1 at 13. The Court construed this claim as arguing that the plea bargain was breached when the superior court refused to apply Proposition 57 to reduce his sentence. ECF No. 10 at 3. In his traverse, Petitioner clarifies that his claim is that the plea bargain was breached when the trial court refused to address the "falsity/illegal advice of Prop. 57" and failed to determine "what the Petitioner reasonably understood to be the terms of the agreement when he pleaded guilty." ECF No. 18 at 20-21. Petitioner argues that the trial court erred when it failed to ask Ms. Olson or the prosecutor why Proposition 57 was referenced on the plea form, at the plea colloquy, or at sentencing, when the trial court was aware that Proposition 57 did not apply to Petitioner and would not result in Petitioner being released in a couple years. Petitioner also argues that the trial court erred in failing to determine whether Petitioner correctly understood Proposition 57. ECF No. 18 at 21. Petitioner raised this claim for the first time in the habeas petition filed in the state supreme court, and the state supreme court summarily denied this claim. Answer, Exs. 14, 15.

### a.    Legal Standard

Due process requires that a guilty plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). It does not, however, require a state court to enumerate all the rights a defendant waives when he enters a guilty plea as long as the record indicates that the plea was entered voluntarily and understandingly. *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986). A trial judge may not accept a defendant's guilty plea without creating a record affirmatively showing that the plea was knowing and voluntary: a silent record is invalid. *See Boykin*, 395 U.S. at 242. *Boykin*'s presumption of invalidity does not extend to collateral challenges, however. See *Parke v. Raley*, 506 U.S. 20, 29-30 (1992). A habeas petitioner bears the burden of establishing that his guilty plea was not knowing and voluntary. *See id.* at 31-34. Of particular importance is

23

that defendant enter a guilty plea with sufficient awareness of the relevant circumstances and likely consequences, *Brady*, 397 U.S. at 748, and that he understand the law in relation to the facts, *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion, and is "unintelligent" if the defendant is without the information necessary to assess intelligently "the advantages and disadvantages of a trial as compared with those attending a plea of guilty." *Brady v. United States*, 397 U.S. 742, 754-55 (1970). The transcript of the plea hearing plays a significant role in an inquiry into the validity of a plea:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citations omitted).

Plea agreements are contractual in nature and subject to contract law standards of interpretation. *Ellis v. District Court*, 356 F.3d 1198, 1209 (9th Cir. 2004). If the terms of the plea agreement have a clear and unambiguous meaning, then the court does not look to extrinsic evidence. *United States v. Streich*, 560 F.3d 926, 929-30 (9th Cir. 2009) (government did not breach promise in plea agreement not to "prosecute" defendant for uncharged conduct by arguing for enhanced sentence based on uncharged conduct). "[A]ny lack of clarity in a plea agreement should be construed against the government as drafter." *United States v. Spear*, 753 F.3d 964, 968 (9th Cir. 2014) (internal quotation marks omitted). In interpreting a plea agreement, courts look to what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty. *Id.* at 11. The construction of a state court plea agreement is governed by state contract law, and the federal court should not disturb a reasonable state court interpretation. *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987). Under California law, in determining whether a plea agreement has been broken, courts must first "look to the plain meaning of the agreement's language." *Buckley v. Terhune*, 441 F.3d 688, 695 (9th Cir. 2006) (citing Cal. Civil Code §§ 1638, 1644). Second, if that language is ambiguous, "it must be interpreted in the sense in which

United States District Court
Northern District of California

1  the promisor believed, at the time of making it, that the promisee understood it." *Id.* (citing Cal.

2  Civil Code § 1649).  "Although the intent of the parties determines the meaning of the contract,

3  the relevant intent is objective—that is, the objective intent as evidenced by the words of the

4  instrument, not a party's subjective intent." *Id.* (quoting *Badie v. Bank of America*, 67 Cal. App.

5  4th 779, 802 n.9 (1998)).  "This inquiry considers the disputed or ambiguous language in the

6  context of the contract as a whole and of the relevant surrounding circumstances." *Id.* at 698

7  (citing *Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal. App. 4th 1103, 1111-12

8  (1998)).  If ambiguity still remains, the contract is construed against the party who caused the

9  uncertainty to exist. *Id.* at 695-96 (citing Cal. Civil Code § 1654).

10           **b.      Analysis**

11           The Court has carefully considered the record and finds that the state court's denial of this

12  claim was not contrary to, or an unreasonable application of, federal law; nor was it an

13  unreasonable determination of the facts in light of the evidence presented in the state court

14  proceeding.  In essence, Petitioner argues that the trial judge violated due process when he failed

15  to confirm that Petitioner understood that Proposition 57 was inapplicable to Petitioner.  However,

16  there was nothing in the record that would have indicated to the trial judge that Petitioner's

17  acceptance of the plea bargain was predicated on Proposition 57 ensuring Petitioner release after

18  two to two-and-a-half years, or that Petitioner misunderstood the applicability of Proposition 57.

19  Rather, the record indicated that Petitioner was pleading guilty so that the charges against Ms.

20  Rinehart would be dropped.  Specifically, the plea declaration described the bargain as agreeing to

21  plead guilty to Count 2 of assault with a deadly weapon and admitting the two prior robbery

22  convictions in return for the dismissal of all charges against Ms. Rinehart and her immediate

23  release from custody.  The plea declaration further stated that the D.A.'s Office reserved the right

24  to refile the charges against Ms. Rinehart if the plea bargain were rejected by the Court or

25  withdrawn by Petitioner.  The plea declaration stated twice that the maximum sentence exposure

26  was 25 years to life, and that the trial court had discretion in deciding whether or not to impose

27  midterm, aggravated, or mitigated prison terms.  ECF No. 1 at 15-17.  Similarly, at the plea

28  colloquy, Ms. Olson described the plea as "deal that wraps up where the co-defendant, the co-

defendant is similarly charged.  With entry of [Petitioner's] plea the charges will be dismissed against her.  And she will be released today."  ECF No. 13-3 at 629.  In response, the sentencing judge stated that this description was consistent with his prior understanding of the plea bargain: "Right.  I understand that before from an earlier hearing.  But it's good you bring it out on the record and get it straight."  ECF No. 13-3 at 629.  The only reference to Proposition 57 in the plea declaration and during the plea colloquy was that Petitioner might be eligible for Proposition 57 relief through the CDCR, ECF No. 1 at 15 ("May be eligible for Prop 57 relief through the CDC."); ECF No. 13-3 at 627 ("But he is eligible for Prop 57.  And he would have to apply for that through the prison."), which accurately described the then-governing regulations as the CDCR promulgated regulations applying Proposition 57.  Finally, the trial court confirmed with Petitioner that Petitioner understood that this case constituted a third strike, that Petitioner had initialed the document and had no reservations about entering the plea; and reviewed with Petitioner the factual basis for the plea and the elements of the conviction offense.  ECF No. 13-3 at 628-233.  The record shows that Petitioner was aware of the relevant circumstances of his plea, namely the elements of his conviction offense, the factual basis for his plea, and that his offense was a third strike; and that Petitioner was aware of the likely consequences, namely that he faced a 25-years-to life sentence and that any Proposition 57 relief would be determined by the CDCR. Because Proposition 57 was a collateral consequence of Petitioner's plea, the trial court was not required to ensure that Petitioner was informed as to how Proposition 57 could affect (or not affect) him in order to satisfy the due process requirement that the plea be voluntary.  *Wills*, 881 F.2d at 825.

Although Petitioner's understanding of his plea bargain may have turned on his mistaken belief that Proposition 57 would result in his being released in two to two-and-a-half years, nothing in the record indicates that his misunderstanding was due to Ms. Olson, the judge, or the prosecution.  The state court reasonably interpreted the plain meaning of the plea agreement as Petitioner agreeing to plead guilty to one of the two charges against him; to the charge being a third strike; and to the maximum exposure being 25 years-to-life, all in exchange for the charges against Ms. Rinehart being dropped.  The federal court should not disturb this reasonable state

court interpretation.  *Ricketts*, 483 U.S. 6 n.3.  Because the terms of the plea agreement were clear and unambiguous and Petitioner stated that he had no reservations about the plea agreement, the state court had no constitutional obligation to conduct an inquiry into Petitioner's understanding of the plea agreement.  The state supreme court's summary denial of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Federal habeas relief is denied on this claim.

### D.      Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Tracy Johnson as respondent because she is Petitioner's current custodian.  For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

/ / /

/ / /

United States District Court
Northern District of California

1     The Clerk shall enter judgment in favor of Respondent and close the file.

2     **IT IS SO ORDERED.**

3  Dated:  July 27, 2023

4  _____
                                                JON S. TIGAR
5                                      United States District Judge